UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MILDRED BALDWIN and RONALD STRUCKHOFF on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIRACLE-EAR, INC.<br><br>Defendant. | Civil File No. _____<br><br>**COMPLAINT – CLASS ACTION** |

**Preliminary Statement**

1. Plaintiffs Mildred Baldwin and Ronald Struckhoff bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiffs allege that Miracle-Ear, Inc. ("Miracle-Ear") sent telemarketing calls to the Plaintiffs and other putative class members to obtain new business and customers for their hearing aid products. Miracle-Ear did so by calling residential numbers including those that were listed on the National Do Not Call Registry ("Registry"), like Ms. Baldwin's, which is prohibited by the TCPA. Miracle-Ear also autodialed cell phone numbers, including Mr. Struckhoff's, without consent, which is also prohibited by the TCPA.

3. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of all persons who received illegal telemarketing calls from, or on behalf of, Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Mildred Baldwin currently resides in Missouri.

6. Plaintiff Ronald Struckhoff currently resides in Missouri.

7. Defendant Miracle-Ear is headquartered in Minnesota in this District, as it was at all relevant times during the conduct alleged in the Complaint.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over Miracle-Ear because its principal place of business is in this District.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls at issue were made from this District.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The TCPA regulates, among other things, the use of a pre-recorded message or an automated telephone dialing system ("ATDS") to make calls or send text messages. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

14. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B). The first component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists of recipients was . . . covered by the TCPA").

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

18. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016),

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

19. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

### Miracle-Ear's Telemarketing

20. Defendant is a hearing aid provider that targets, among other things, individual consumers like Plaintiffs.

21. Defendant uses telemarketing as one of its primary means to promote its products directly to individual consumers like Plaintiffs.

22. Miracle-Ear advertises that it seeks to hire telemarketing employees, "Telemarketing Outreach Specialists[,]" to work in its marketing department. *See* https://www.indeed.com/cmp/Miracle-Ear/jobs?jk=e356ac88fa39ead0&start=0&clearPrefilter=1

23. Recipients of these calls, including Plaintiffs, did not consent to receive the calls and are often on the National Do Not Call Registry.

24. Furthermore, the automated calls are made to cellular telephones, like Mr. Struckhoff's.

25. In fact, Miracle-Ear has previously been sued for violations of the TCPA, including allegations that they were making telemarketing calls to numbers on the National Do Not Call Registry.

26. The State of Missouri alone has received more than a dozen complaints about the telemarketing conduct of Miracle-Ear.

## Factual Allegations for Calls to Ms. Baldwin

Calls to Ms. Baldwin

27. Plaintiff Baldwin is a "person" as defined by 47 U.S.C. § 153(39).

28. Ms. Baldwin's telephone number, (XXX) XXX-2768, is assigned to a residential service.

29. The number is used for domestic purposes only.

30. The number is not associated with any business.

31. The number is currently and has been continuously on the Registry since March of 2016, more than 31 days prior to the calls received in December 2019.

32. Miracle-Ear placed at least two telemarketing calls to Ms. Baldwin.

33. The calls were on December 11 and 20, 2019.

34. The caller used a local Caller ID to increase the likelihood that recipients would answer.

35. Two of the calls used Caller ID numbers of (660) 290-0650 and (660) 290-0617.

36. The purpose of each call was to sell Miracle Ear products.

37. The solicitation of each call included a call back number of (844) 300-4252.

38. This number is associated with Miracle Ear.

39. Other individuals have complained about calls from Miracle Ear from that left the same number for a callback:

> Message said it was Rebecca at Miracle Ear trying to set my annual appointment and maybe provide hearing aid at no cost to me. I have never contacted Miracle Ear or had an annual appointment with any ear doctor or clinic.

*See* https://www.shouldianswer.com/phone-number/8443004252.

40. Ms. Baldwin has never done any business with Miracle Ear.

41. Ms. Baldwin has never consented to receiving calls from or on behalf of Miracle Ear at any relevant time.

42. Ms. Baldwin has never visited a Miracle Ear location or provided her phone number to Miracle Ear for telemarketing purposes.

Calls to Mr. Struckhoff

43. Plaintiff Struckhoff is a "person" as defined by 47 U.S.C. § 153(39).

44. Mr. Struckhoff's cellular telephone number is (XXX) XXX-9392.

45. Mr. Struckhoff's landline number is (XXX) XXX-0166.

46. Both numbers are used for domestic purposes only.

47. Neither number is associated with any business.

48. Mr. Struckhoff received calls from Miracle Ear on October 24 and 25, 2019.

49. The call on October 24, 2019 was to Mr. Struckhoff's cellular telephone.

50. The call on October 25, 2019 was to Mr. Struckhoff's residential line.

51. The calls were both from (314) 397-7595.

52. Mr. Struckhoff received both calls, saw that they were incoming and did not recognize the caller.

53. Mr. Struckhoff did not want to answer a call from an unidentified caller.

54. Mr. Struckhoff let the calls go to voicemail.

55. The Defendant left an identical message on each call.

56. There was an individual who identified herself and stated that she was with Miracle Ear.

57. Miracle-Ear services were promoted on both calls, by inviting Mr. Struckhoff to visit a Miracle-Ear location for an appointment.

58. The October 24, 2019 call to Mr. Struckhoff's cellular telephone was made with an ATDS, as that term is defined by the TCPA.

59. The call was made by an ATDS because:

a. The geographic distance between the caller and call recipient is indicated of a *en masse* calling campaign.

b. Miracle-Ear used an automated calling system to manipulate the Caller ID to make it appear like it was coming from a local exchange.

c. All of the calls alleged in the complaint used an identical script, which is consistent with automated technology being used to queue each agent and then prompt them to speak the same script. This would involve loading a list of numbers and having the dialing system automatically call them without any further human intervention or effort.

      d. Furthermore, the script used on each automated call was generic in nature, not identifying the recipient of the call.

      e. This automated queue approach is consistent with the use of a predictive dialer.

      f. Miracle-Ear has also been the subject of more than a dozen complaints to the Missouri Attorney General for unsolicited telemarketing, which is indicative of a wide-spread calling campaign.

60. As a predicative dialer, the dialing system used can also produce numbers using a sequential number generator and dial the numbers automatically.

61. The dialing system can do this by inputting a straightforward computer command.

62. Following a command, the dialing system will sequentially dial numbers.

63. In that scenario, the dialing system could dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

64. This would be done without any human intervention or further effort.

65. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, a nuisance, and disturbed the solitude of Plaintiff and the classes.

## Class Action Allegations

66. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

67. The classes of persons Plaintiff proposes to represent is tentatively defined as:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Miracle-Ear (3) within a 12-month period, (4) from four years prior the filing of the Complaint.
>
> **ATDS Class**: All persons in the United States whose (1) telephone numbers were assigned to a cellular telephone service, (2) but who received one or more calls from or on behalf of Miracle-Ear (3) using the same or similar dialing system used to call Mr. Struckhoff; (4) from four years prior the filing of the Complaint.

These are referred to as the "Classes".

68. Excluded from the Classes are counsel, the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

69. The Classes as defined above are identifiable through phone records and phone number databases.

70. The potential members of the Classes number at least in the thousands.

71. Individual joinder of these persons is impracticable.

72. The Plaintiff Baldwin is a member of the National Do Not Call Registry Class.

73. The Plaintiff Struckhoff is a member of the ATDS class.

74. There are questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

    (a) whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    (b) whether Defendant used an Automatic Telephone Dialing System, as that term is defined under the TCPA, to make calls to the ATDS class members.

    (c) whether Defendant made calls to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

    (d) whether Defendant's conduct constitutes a violation of the TCPA; and

    (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

75. Plaintiff Baldwin's claims are typical of the claims of members of the National Do Not Call Registry Class.

76. Plaintiff Struckhoff's claims are typical of the claims of members of the ATDS class.

77. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

78. Class certification is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted because:

a. Common questions of law and fact overwhelmingly predominate over any individual questions that exist within the class and, consequently, economies to the Court and parties exist in litigating the common issues on a class-wide basis instead of on a repetitive individual basis;

b. Each class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c. Class treatment is required for optimal deterrence and compensation and for limiting the Court-awarded, reasonable legal expenses incurred by class members; and

d. No unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class

79. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

**FIRST CAUSE OF ACTION**

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Baldwin and the National Do Not Call Registry Class)**

80. Plaintiff Baldwin repeats the prior allegations of this Complaint and incorporates them by reference herein.

81. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

82. The Defendant's violations were negligent, willful, or knowing.

83. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

84. Plaintiff Baldwin and members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, to any cellular telephone number in the future.

## SECOND CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Struckhoff and the ATDS Class)**

85. Plaintiff Struckhoff repeats the prior allegations of this Complaint and incorporates them by reference herein.

86. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the ATDS Class using an Automatic Telephone Dialing System to the cellular telephones of Plaintiff and ATDS class members.

87. The Defendant's violations were negligent, willful, or knowing.

88. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

89. Plaintiff Struckhoff and members of the ATDS Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to any cellular telephone number in the future, except for emergency purposes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future or to numbers on the National Do Not Call Registry.

F. An award to Plaintiff and the Classes of damages, as allowed by law; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 1, 2020                               Respectfully submitted,

 s/Daniel E. Gustafson
Daniel E. Gustafson (#202241)
Catherine K. Smith (#353723)
Raina C. Borrelli (#392127)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
rborrelli@gustafsongluek.com

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice* application forthcoming)
936 N. 34th Street, Suite 300
Seattle, WA 98103
608-237-1775

Sam@turkestrauss.com

PARONICH LAW, P.C.
Anthony I. Paronich (*pro hac vice* application forthcoming)
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

***Attorneys for Plaintiffs and Proposed Class***

16