UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MILDRED BALDWIN and RONALD STRUCKHOFF on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

MIRACLE-EAR, INC.

    Defendant/Third-Party Plaintiff,

v.

LAS DAVIS ENTERPRISES, INC.; HEARINGPRO, INC.; and TIFFANY DAVIS

    Third-Party Defendants.

Case No. 0:20-cv-01502 (JRT/HB)

**MIRACLE-EAR, INC.'S THIRD-PARTY COMPLAINT AGAINST LAS DAVIS ENTERPRISES, INC., HEARINGPRO, INC., AND TIFFANY DAVIS**

---

Defendant Miracle-Ear, Inc. ("Miracle-Ear") alleges the following for its third-party complaint against Las Davis Enterprises, Inc., HearingPro, Inc., and Tiffany Davis:

## **PARTIES**

1. The plaintiffs in the underlying action, Mildred Baldwin and Ronald Struckhoff (together, the "Plaintiffs") are people. On information and belief, they both live in Missouri. (*See* Dkt. 1, ¶¶ 5, 6.)

2. Defendant/Third-Party Plaintiff Miracle-Ear, Inc. is a Minnesota corporation headquartered in Minnesota.

3. Third-Party Defendant Las Davis Enterprises, Inc. ("Las Davis") is a Missouri corporation headquartered in St. Louis, Missouri. Las Davis is a franchisee of Miracle-Ear and has two franchises with Miracle-Ear.

4. Third-Party Defendant HearingPro, Inc. ("HearingPro") is a Missouri corporation headquartered in St. Louis, Missouri. HearingPro is a franchisee of Miracle-Ear and has two franchises with Miracle-Ear.

5. Third-Party Defendant Tiffany Davis is a person who, upon information and belief, resides in Missouri. Ms. Davis is CEO and/or President of Las Davis and HearingPro. Ms. Davis signed a personal guaranty for each of the Miracle-Ear franchise agreements of Las Davis and HearingPro.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the Third-Party Defendants because they entered franchise agreements with Miracle-Ear in Minnesota, where Miracle-Ear is located, and because they consented to personal jurisdiction by the U.S. Federal District Court for the District of Minnesota in their franchise agreements, pursuant to which Miracle-Ear's third-party claims arise. *See Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001).

7. This Court has subject matter jurisdiction over the Third-Party claims because those claims involve apportionment of liability, if any, of Plaintiffs' TCPA claim—a federal statute over which this Court has federal question jurisdiction. 28 U.S.C. 1331. This Court also has jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different states.

8. Venue is proper in Minnesota because the Third-Party Defendants entered franchise agreements with Miracle-Ear in Minnesota, where Miracle-Ear is located, and because they consented to venue in the U.S. Federal District Court for the District of

Minnesota in their franchise agreements, pursuant to which Miracle-Ear's third-party claims arise. *See Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953).

## BACKGROUND

9. Tiffany Davis, through her two companies Las Davis and HearingPro, has a total of four Miracle-Ear franchises, which operate in Missouri, Illinois, Kansas and Arkansas.

10. Las Davis and Tiffany Davis signed a franchise agreement for a Miracle-Ear franchise, effective October 31, 2016, for territory covering 96 zip codes in the state of Illinois.

11. HearingPro and Tiffany Davis signed a franchise agreement for a Miracle-Ear franchise, effective February 6, 2019, for territory covering 233 zip codes in the state of Missouri.

12. HearingPro and Tiffany Davis signed a franchise agreement for a Miracle-Ear franchise, effective June 9, 2019, for territory covering 157 zip codes in the state of Missouri.

13. Las Davis and Tiffany Davis signed a franchise agreement for a Miracle-Ear franchise, effective March 31, 2020, for territory covering 247 zip codes in the state of Missouri, 29 zip codes in the state of Kansas, and 47 zip codes in the state of Arkansas. (The four franchise agreements described above are hereinafter referred to as the "Franchise Agreements" and Las Davis and HearingPro are hereinafter referred to as the "Franchisees.")

14. The Franchise Agreements allow the Franchisees to market and sell Miracle-Ear's hearing aids and operate Miracle-Ear retail hearing aid stores, among other things.

15. The Franchise Agreements each provide that "Franchisee agrees to comply with all federal, state, and local laws, rules and regulations applicable to the Franchise…."

16. The Franchise Agreements each provide that the Franchisees are solely responsible for the use of their telephone lines:

> <u>Designated Telephone Lines</u>. Miracle-Ear may contract with third party providers to establish designated telephone lines for Franchisee in conjunction with internet marketing initiatives and otherwise ("Designated Phone Lines"). Calls that are placed using Designated Telephone Lines may be recorded and callers to these numbers will be automatically advised that each call is subject to recording and monitoring prior to the connection. Franchisee is solely responsible for determining the legality of recording, monitoring, storing, and divulging telephone calls in the states in which they operate, and Franchisee shall use the Designated Telephone Lines in full compliance with all such applicable laws and regulations. Franchisee shall establish procedures to protect the privacy of, and otherwise comply with, all applicable laws and regulations in connection with the use of Designated Telephone Lines….

17. The Franchise Agreements each further require Franchisees to comply with the law in their advertising and marketing:

> **General Advertising**. All advertising by Franchisee in any medium (including, but not necessarily limited to, internet, social media, print, radio, television, computer or other electronic transmission) shall be conducted in a dignified and truthful manner, and shall comply with all applicable rules and regulations, including those of the Federal Trade Commission, the U.S. Food and Drug Administration and various state authorities regulating such advertising…."

18. The Franchisees also agreed to indemnify Miracle-Ear for breaches of the Franchise Agreements, among other things:

> <u>Indemnification</u>: Miracle-Ear shall not assume liability for, or be deemed liable hereunder as a result of any such action, or by reason of any act or omission of Franchisee in its conduct of the Franchise, or any claim or judgment arising therefrom against Miracle-Ear. Franchisee shall indemnify and hold Miracle-Ear, its affiliates, officers, directors, employees and agents harmless against any and all claims, loss, liability, damage, cost and expense arising directly or indirectly from, as a result of, or in connection with Franchisee's operation of the Franchise resulting from Franchisee's negligence, breach of contract or

other civil wrong, as well as the costs, including attorneys' fees or expenses, of defending against any such claims.

19. Upon information and belief, the calls made to Plaintiffs and putative class members—if made at all—were made by or on behalf of the Franchisees or Tiffany Davis. (*See* Dkt. 1, ¶¶ 32–38; 48–57.)

20. Upon information and belief, the telephone numbers (660) 290-0650 and (660) 290-0617—which were telephone numbers alleged to have called Plaintiff Baldwin (*see id.* ¶ 35)—were owned by or assigned to the Franchisees or Tiffany Davis during 2019 and 2020.

21. Upon information and belief, the telephone number (844) 300-4252—which was a "call-back number" alleged to have been given to Plaintiff Baldwin (*see id.* ¶ 37)—is owned by or assigned to the Franchisees or Tiffany Davis.

22. It is unknown who owns or owned the telephone number (314) 397-7595—which was the telephone number alleged to have called Plaintiff Struckhoff—but the area code 314 is a St. Louis, MO area code that is part of the territory of the Franchisees.

23. Miracle-Ear did not make the calls to Plaintiffs Baldwin or Struckhoff.

24. Miracle-Ear does not conduct the type of call campaigns described in Plaintiffs' Complaint and does not make telemarketing calls for sale of its products.

25. Miracle-Ear did not advise or direct the Franchisees or Tiffany Davis to make telemarketing calls to customers or potential customers.

26. Even though the Franchise Agreements required the Franchisees to obtain approval from Miracle-Ear of their advertising, neither the Franchisees nor Tiffany Davis

sought approval or obtained approval from Miracle-Ear for the telemarketing campaigns, if any, described in Plaintiffs' Complaint.

## COUNT ONE: BREACH OF CONTRACT

27. Miracle-Ear incorporates by reference the preceding paragraphs of this third-party complaint as though set forth here in their entirety.

28. The Franchisees and Tiffany Davis are contractually obligated to conduct their advertising campaigns in accordance with the law.

29. Miracle-Ear has a contractual expectation and right to such compliance by the Franchisees and Tiffany Davis.

30. Miracle-Ear has a contractual expectation and right to be free from any liability to persons who received telephone calls by or on behalf of Franchisees or Tiffany Davis based on Franchisees' or Tiffany Davis's failure to comply with the law with respect to their advertising.

31. To the extent calls were made by or on behalf of Franchisees or Tiffany Davis to any customers, potential customers, or others in violation of the Telephone Consumer Protection Act ("TCPA"), Franchisees and Tiffany Davis breached their contractual obligations to Miracle-Ear, including but not limited to their obligations to conduct their calling and advertising in compliance with the law.

32. To the extent Miracle-Ear is held liable for calls made by or on behalf of Franchisees or Tiffany Davis to Plaintiffs or members of Plaintiffs' putative class, such liability will directly result from Franchisees' and Tiffany Davis's breaches of contract.

33. To the extent Miracle-Ear is held liable for calls made by or on behalf of Franchisees or Tiffany Davis to Plaintiffs or members of Plaintiffs' putative class, Franchisees and Tiffany Davis is liable to Miracle-Ear for that portion of Plaintiffs' and the putative class's recovery.

34. To the extent Miracle-Ear is held liable for calls made by or on behalf of Franchisees or Tiffany Davis to members of Plaintiffs' putative class, the attorney fees and other litigation expenses that Miracle Ear may incur in defense of such claims also will directly result from the Franchisees' and Tiffany Davis's breaches of contract.

35. To the extent Miracle-Ear is held liable for calls made by or on behalf of Franchisees or Tiffany Davis to members of Plaintiffs' putative class, Franchisees and Tiffany Davis is liable to Miracle-Ear for the attorney fees and other litigation expenses that Miracle-Ear may incur in defense of claims based on those calls.

## COUNT TWO: CONTRACTUAL INDEMNITY

36. Miracle-Ear incorporates by reference the preceding paragraphs of this third-party complaint as though set forth here in their entirety.

37. The Franchise Agreements contractually obligate Franchisees and Tiffany Davis to indemnify Miracle-Ear against any and all losses arising out of "Franchisee's operation of the Franchise resulting from Franchisee's negligence, breach of contract or other civil wrong."

38. To the extent Miracle-Ear is held liable to members of Plaintiffs' putative class based on calls made by or on behalf of Franchisees or Tiffany Davis to those putative class members, or other violations of the TCPA, then Franchisees and Tiffany Davis have a

contractual obligation to indemnify Miracle-Ear for any losses arising out of those alleged violations.

## COUNT THREE: EQUITABLE INDEMNITY

39. Miracle-Ear incorporates by reference the preceding paragraphs of this third-party complaint as though set forth here in their entirety.

40. Miracle-Ear did not make the calls about which Plaintiffs and putative class members complain in the Complaint.

41. Those calls, if any, were made by or on behalf of Franchisees or Tiffany Davis.

42. Miracle-Ear did not direct or approve that such calls be made and had no knowledge that Franchisees or Tiffany Davis were making such calls; if the TCPA was violated, Miracle-Ear had no knowledge of, and did not join in, any such violations.

43. To the extent Miracle-Ear is held liable to members of Plaintiffs' putative class based on calls made by or on behalf of Franchisees or Tiffany Davis in violation of the TCPA, equity demands that such liability be borne by the Franchisees or Tiffany Davis.

## COUNT FOUR: CONTRIBUTION

44. Miracle-Ear incorporates by reference the preceding paragraphs of this third-party complaint as though set forth here in their entirety.

45. In the alternative to Miracle-Ear's claims for indemnification, Franchisees and Tiffany Davis at least will be liable to Miracle-Ear for contribution if Miracle-Ear is held liable to members of Plaintiffs' putative class based on calls allegedly made in violation of the TCPA by Franchisees or Tiffany Davis.

46. To the extent that any purported negligence by Miracle-Ear caused members of Plaintiffs' putative class to be called by Franchisees in violation of the TCPA, then Franchisees' and Tiffany Davis' greater negligence also caused such violations.

47. To the extent any purported negligence by Miracle-Ear results in Miracle-Ear being liable to members of Plaintiffs' putative class based on the calls made by or on behalf of Franchisees or Tiffany Davis, then Franchisees and Tiffany Davis, as a joint tortfeasors, will owe common liability to the same putative class members for the same alleged damages caused by those calls.

48. Miracle-Ear will bear an unequal and unfair portion of the common burden if judgment is entered against it for any purported liability owed to members of Plaintiffs' putative class based on calls made by or on behalf of Franchisees or Tiffany Davis.

49. In the alternative to Miracle-Ear's claims for indemnification, Miracle-Ear at least will be entitled to recover from Franchisees and Tiffany Davis in proportion to Franchisee's and Tiffany Davis's share of the comparative fault if Miracle-Ear is held liable to members of Plaintiffs' putative class based on calls made by Franchisees and Tiffany Davis.

**WHEREFORE**, Miracle-Ear seeks:

A. Judgment against Las Davis, HearingPro, and Tiffany Davis in the amount of any liability that members of Plaintiffs' putative class might recover against Miracle-Ear, based on calls made by or on behalf of Franchisees or Tiffany Davis.

B. In the alternative, judgment against Franchisees and Tiffany Davis in the amount of their proportionate share of any liability that members of Plaintiffs' putative class might recover against Miracle-Ear based on calls made by or on behalf of Franchisees or Tiffany Davis.

C. An order awarding Miracle-Ear attorney fees and costs as allowed by law.

D. All other relief that the Court deems just, proper, and equitable.

| | |
|---|---|
| Dated: November 6, 2020 | /s/ Nathan Brennaman |
| | Erin L. Hoffman |
| | Bar Number 0387835 |
| | Nathan Brennaman |
| | Bar Number 0331776 |
| | Attorneys for Defendant |
| | *Miracle-Ear, Inc.* |
| | FAEGRE DRINKER BIDDLE & REATH LLP |
| | 2200 Wells Fargo Center |
| | 90 South Seventh Street |
| | Minneapolis, MN 55402-3901 |
| | Telephone: (612) 766-7000 |
| | Fax: (612) 766-1600 |
| | erin.hoffman@faegredrinker.com |
| | nate.brennaman@faegredrinker.com |